By the Court.—Monell, J.
It is claimed by the *477 appellant that the principle which controlled the decision of this court in the National Bank of Commerce v. the National Mechanics Banking Association (35 N. Y. Sup. Ct. R. 282) has no application to this case. In that the check was certified before alteration ; in this case it was certified after alteration. The difference, it is claimed, so distinguishes the cases, that the present case is not embarrassed by a former decision.
In the case referred to, a check for a small amount was certified by the bank. It was afterwards altered to a larger sum, and negotiated. It was paid by the certifying bank, through the clearing-house, without discovering the alteration. It having been found that the payment was made under a mistake of facts, it was held the certifying and paying bank could recover.
In this case, however, it is insisted that by the certification of the check after its alteration, the bank incurred an obligation which estops it from claiming the benefit of a mistake.
It is conceded, that had the bank, upon presentation of the check, paid the amount over its counter, it could recover. This is precisely in accordance with Bank of Commerce v. Union Bank (3 N. Y. R. 230) and the late case in this court of the same plaintiff against the National Mechanics Banking Association. In the first of these cases, a sight draft was altered after it was issued, and paid by the drawee in ignorance of the forgery, and it was held he could recover.
No greater effect can be given to a bank certification of a check, than to the acceptance by the drawee of a bill of exchange. The obligation is the same in the two cases (Farmers Bank v. B. & D. Bank, 16 N. Y. R. 125; Barnes v. Ontario Bank, 19 Id. 152, 159). And in neither case does the obligation extend beyond a guarantee of the genuiness of the drawer’s signature. It is not a guarantee that the amount is correct (Bank of Commerce v.Union Bank, supra).
*478 The plaintiffs, by their certification of the check, are not estopped from showing the forgery of the amount, or the alteration of the name of the payee. The signature of the drawer was genuine, and there the obligation of the payee terminated.
There is nothing, therefore, in the contract of acceptance of a bill of exchange, or of the certification of a check, which can distinguish it from an actual payment except so far as it may operate as an estoppel; and if a recovery can be had in the latter case, it can also be had in the other. It is the mistake offacts which enables a party to recover ; and there can be no difference in principle between an actual payment of money under a mistake, and the incurring of' an obligation to pay money.
It is substantially found, and is undoubtedly true, that Derippe & Co. received the check in ignorance of the alteration, and upon the faith of the plaintiff s' certificate; and the defendants insist that the plaintiffs should be estopped from claiming, as against the defendants, the benefit of the mistake, upon the principle as well of estoppel, as also that when one of two innocent persons must suffer, the loss should fall upon the one who has been chiefly instrumental in producing it.
The reliance of Derippe & Co. was upon the certificate written upon the check. It conveyed to them the information (if it did not contain the obligation) that it was “good” for the amount specified in it. In ignoranee of the alteration, that amount they took to be $4,679.96 ; and they parted with that sum to the holder, and received the check innocently and ignorantly.
Had no other rights intervened, doubtless the certifying bank could legally have claimed the benefit of the mistake. It could have insisted that it had merely guaranteed the genuiness of the drawers’ signature, and had assumed no obligation as to the amount inserted, *479 and having paid it under a mistake, could probably | have recovered.
1' But I am of opinion that other rights had intervened, and that Derippe & Co. were authorized to rely upon, as they did rely upon, the certificate upon the check, i When it was presented, it purported to be payable to their order; it was payable to their order, and filled for the full sum of $4,679.96, and there was nothing to excite suspicion. Yet Derippe & Co., before they would part with value, required the check to be certified. It was accordingly taken to the bank, the certificate put upon it, and then delivered to Derippe & Co. for its full amount.
A general definition of an estoppel in pais is thus given in Continental Bank v. Bank of Commonwealth (SOW. Y. JR. 575, 581): “It is argued that theré must have been some act or declaration of the plaintiff or of its agent to the defendant, assignors, which so affected the conduct of the latter to their injury, as that it would be unjust now to permit the plaintiff to set up the truth of the case to the contrary of its mistaken act or declaration.” In that case the certificate of the bank teller was a forgery. But the defendant before receiving the check, caused inquiry to be made of the teller, who pronounced it “all right.” It was held that the bank was estopped by the declaration of its teller from questioning the genuineness of the certification. In that case the receiver of the check relied upon the declaration of the teller, and parted with value only upon such declaration. In the case before us, Derippe & Co. relied on the act of the bank, and parted with value only upon such act. The declaration in the one case, and the act in the other, were both and equally made under a mistake, yet they must both and equally have the same effect. They equally affected the conduct of the receivers of the checks, and as Derippe & Co. were led by the act of the plaintiffs into the belief that the check *480 was “good” for the whole' amount, it must estop the latter from “setting up the truth to the contrary of its mistaken act.”
I think also that regarding the parties as equally innocent, the loss should fall on the plaintiffs as being the chief instrument in producing it. It innocently and under a mistake certified the check. It thereby induced the receiver to part with value. Without the certificate, Derippe & Co. doubtless would not have received the check, and would not have been injured, but receiving it, on 'the strength of the certificate, the injury may be fairly attributable to the act of the plaintiff.
There was nothing in the evidence to impair the entire good faith of Derippe & Co. There was nothing to excite suspicion or to put them on inquiry. In respect to the alterations of the check, both in the amount and in the name of the payee, the bank which certified it in its altered condition, and Derippe & Co., who afterwards received it, must equally be regarded as ignorant and innocent.
The plaintiffs, being estopped by their act of certification of the check from alleging the truth as against Derippe & Co., are equally estopped as against the defendants who received the check from Derippe & Co.
The learned referee arrived at a different conclusion, but not without much doubt and misgiving. He however thought another objection was conclusive, namely, that Derippe & Co. did not get title to the check, for the reason that the erasure of Smith’s name and the insertion of Derippe’s & Co’s. was a forgery. It was no more a forgery than the alteration of the amount. Either rendered the check void as to the drawer. But it does not follow that as between Derippe <fc Co. and the plaintiff, the alterations in the check will impair their relative rights. Had the bank not paid the check, Derippe & Go. would have been remediless against the drawers. But I apprehend the question between De *481 rippe & Co. and the plaintiff is quite a different one, and it does not lie with the latter to inquire into the former’ s title. It was certified after the payee’s name had "been altered, and in the condition it was as to the amount, and so came to Derippe & Co.
The same state of facts existed in Bank of Commerce v. Union Bank (supra). The payee’s name had been altered. But the court put its decision on the ground of a payment made under a mistake of facts, not because the holder had no title.
I am of opinion that the conclusions of tire referee were erroneous, and that his judgment should he reversed, the order of reference vacated, and a new trial granted, with costs to the appellant to abide the event-
Barbour, Ch. J., and Freedman, J., concurred.